UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20157-CR-ROSENBAUM/MATTHEWMAN(S)

UNITED STATES OF AMERICA,

       Plaintiff,

v.

MANUEL ROWINSKY, *et al.*,

       Defendants.

_____/

**ORDER ON DEFENDANT'S MOTION *IN LIMINE* [D.E. 282]**

    This matter is before the Court on Defendant Manuel Rowinksy's Motion *in Limine* to Strike Summaries and Added Information to Bank Surveillance Photos Sought to be Introduced into Evidence by the Government on the Grounds that They Constitute Inadmiss[i]ble Hearsay and that Their Admission Will Violation Defendant's Right of Confrontation Under the Sixth Amendment [D.E. 282]. The Court has reviewed Defendant Rowinsky's Motion *in Limine*, all supporting and opposing filings, and the record. After careful consideration, the Court now grants in part and denies in part Defendant's Motion *in Limine* for the reasons set forth below.

*I.  Background*

    Defendant Manuel Rowinsky is charged by Superseding Indictment along with six[1] others: Paul Cordoba, Marlon Cordoba, Antonio Cordoba, Francisco Gamero Medina, Cecilia Cordoba, and Ramon Acosta. The Superseding Indictment sets forth two cocaine-trafficking conspiracies, substantive cocaine-trafficking offenses, two money-laundering conspiracies, a substantive money-

---

[1] Another defendant, Jefferson Castillo, pled guilty to a Superseding Information.

laundering offense, and a count of making a false statement relating to transporting a controlled substance by aircraft. *See* D.E. 96. Only Count 9, which alleges a money-laundering conspiracy regarding the alleged proceeds of the Co-defendants' alleged possession with intent to distribute cocaine, charges Defendant Rowinsky. *See id.*

Prior to his arrest in this matter, Rowinsky was an employee of the Aventura North Branch of Wachovia Bank. *See* D.E. 288 at 1. According to Rowinsky, "[t]he gravamen of the government's case [against Rowinsky] is that he assisted . . . Paul . . . and Marlon Cordoba to launder drug proceeds through [his employment with] . . . Wachovia Bank . . . ." *Id.*

The Government has advised Defendant that it intends to introduce approximately 23 still images that it has obtained from bank-surveillance video clips generated at the Aventura North Branch of Wachovia Bank. *See* D.E. 282 at 1-2. These photographs depict activities that occurred at the bank on dates when the Government claims a cash deposit or deposits relevant to the money-laundering charges were being made. *Id.* at 2. Defendant does not object to the admissibility of these images.

In addition to these pictures and as separate exhibits, however, the Government has informed Defendant that it intends to seek admission of these same images with added notations on the images. *See id.* For example, Exhibit 101A contains multiple pages. The first page, a cover page, is labeled "Wachovia Bank Surveillance Video Clips" and bears the date June 25, 2009. D.E. 282-1. Under the date, the words "Bank Surveillance Evidence," "Tape #14," and "Aventura North Branch" appear. *Id*. The seals of the Broward Sheriff's Office and the United States Department of Justice Drug Enforcement Administration also appear on the cover page, along with a Government exhibit sticker. In his Motion *in Limine* [D.E. 282] that is the subject of this Order, Defendants object to the

-2-

seals on this page of the exhibit, arguing that "the inclusion of these seals on the exhibit would be confusing to the jury and potentially prejudicial to the defendant." D.E. 282 at 2. They do not object to any other aspect of the cover page.

With respect to the second page, however, Defendant complains that information contained should not be admitted into evidence as an exhibit. This page is entitled "Summary," and, in the case of Exhibit 101A, it shows a table that purports to summarize four $9,000 deposits into four separate bank accounts, that occurred on June 25, 2009, at the Aventura North Branch of Wachovia Bank. D.E. 282-1 at 2. Specifically, the table provides,

| DATE OF DEPOSIT | TIME | CASH | ACCOUNT # | ACCOUNT HOLDER . . . |
|---|---|---|---|---|
| 06/25/09 | 9:22 AM | $9,000.00 | XXXXXXXXX2718 | Marlon Cordoba |
| 06/25/09 | 9:22 AM | $9,000.00 | XXXXXXXXX2078 | Paul Cordoba |
| 06/25/09 | 9:25 AM | $9,000.00 | XXXXXXXXX4840 | One Way Jet |
| 06/25/09 | 9:28 AM | $9,000.00 | XXXXXXXXX8935 | Francisco Medina |
| | | $36,000.00 | | |

*Id.*

Similarly, the third page of Exhibit 101A is entitled, "Computer Access 06/25/2009," and it contains a table that purports to show that Rowinsky accessed Wachovia Bank's computers in connection with the four deposits referred to on the second page of the exhibit. *Id.* at 3. In particular, the table reflects,

**COMPUTER ACCESS 06/25/2009**

| Access Times | Banker | Account Holders | Accounts |
|---|---|---|---|
| 09:34 | Rowinsky, Manuel | MARLON CORDOBA | 9946 & 2718 |
| 10:28 | Rowinsky, Manuel | ONE WAY JET LLC | 4840 |

| 09:40 | Rowinsky, Manuel | PAUL CORDOBA | 2078 & 2049 |

*Id.*

The remaining several pages of the exhibit include other still images taken from the bank's surveillance video cameras.  *See* D.E. 282-1 at 4-10.  Along with the images, the Government has included certain commentary on each picture.  For example, along with the image of a vehicle that apparently was in the bank's parking lot, the words "2006 Hummer arrived at front bank[;] Aventura North Branch" appear.[2]  Likewise, another page of the exhibit reflects a similar image from about the same time, but the Government has circled the picture of the vehicle and has drawn an arrow to a small image within the vehicle, along with the identification, "PAUL."  *Id.* at 5.  Page six of the exhibit reflects another image in what is apparently the same series of images, but this one includes notations circling the vehicle and pointing to two people near the vehicle, with the identifications, "PAUL" and "MARLON."  *Id.*  In addition, a sentence beneath the image reads, "Minutes later Paul and Marlon enter the bank."  *Id.*

Next in the sequence is a photograph from a surveillance camera inside the bank.  This image contains a large circle added by the Government, with the legend, "PAUL" and the date and time of the photograph.[3]  *See id.* at 7.  Similarly, page eight in the series apparently is another photograph from bank-surveillance footage taken inside the branch.  *See id.* at 8.  This image shows several

---

[2]In addition, the date, time, and bank's camera number are imprinted on the image, apparently by the bank's surveillance equipment.  Defendants do not contest these aspects of the image.

[3]The image filed with the Court is overexposed, and the Court cannot see any individual within the circle added by the Government.  For purposes of this Motion, however, the Court assumes that the original version of the page includes a discernible person.

people. The Government has circled two individuals from among the crowd and has drawn arrows to each of them indicating, respectively, "MARLON" and "FRANCISCO." *Id.* The other two pages of this exhibit contain similar images along with the Government's explanatory commentary added to them. *See id.*

In his Motion *in Limine*, Defendant seeks to preclude the Government from admitting these types of exhibits — twenty-three in all — on the bases that they include hearsay and violate Defendant's Sixth Amendment right to confrontation. Defendant further posits that admitting the exhibits as currently formulated would constitute an abuse of discretion under Eleventh Circuit precedent. In making this Motion, however, Defendant emphasizes that he does not oppose the admission of the photographic images (including any metadata created by the bank and appearing on the images) taken from the bank's surveillance footage themselves. Instead, he challenges the enhancements and additional information that the Government has added to the images.

In response, the Government states that the seals appear on the cover sheets of the exhibits for the purpose of identifying the agency that created the exhibit and offers that it has no objection to a limiting instruction regarding the seals. As for the summary pages listing transactions and computer access, the Government notes that the information set forth on those sheets is taken from records that Defendant has had for more than a year. The Government asserts that the exhibits merely summarize this other admissible evidence in a way that will be helpful to the jury so the witnesses, while testifying need not fish through pages of computer print-outs to identify all transactions pertaining to a particular charge. As a result, the Government opines, the summary pages are admissible under Rules 611(a) and 1006, Fed. R. Evid. With regard to the other notations on the exhibits, the Government denies that they violate Defendant's Sixth Amendment rights

because the declarant who made the notations will be testifying at the time that the evidence is sought to be admitted, and thus, will be subject to cross examination. In short, the Government contends that the additional information contained in the exhibits at issue is nothing more than evidence that is otherwise admissible, and admitting the exhibits in their current iterations will save the parties, the Court, and the jury a tremendous amount of time and will avoid confusing the jury, in furtherance of Rule 611(a), Fed. R. Evid.

### *II. Discussion*

Defendant argues that permitting the Government's proposed exhibits to be admitted into evidence would constitute an abuse of discretion. *See* D.E. 290 at 1. In support of this contention, Defendant relies on *United States v. Pendas-Martinez*, 845 F.2d 938, 941 (11th Cir. 1988), and *United States v. Brown*, 451 F.2d 1231, 1234 (5th Cir. 1971). *See* D.E. 290 at 1.

*Brown* and *Pendas-Martinez*, in turn, find their genesis in *United States v. Ware*, 247 F.2d 698 (7th Cir. 1957). In *Ware*, the court admitted two exhibits that were envelopes containing heroin purchased from the defendant. The outsides of the envelopes bore notations that the investigating agents had made, such as the following:

> Name Larry Ware Alias 'Nick'
>
> * * *
>
> Evidence 1 oz. 266 grains Heroin — contained in 3 glassine envelopes
>
> (Not original containers)
>
> How Obtained — Purchased by W. H. Newkirk
>
> Where obtained 4000 block Prairie Ave., Chicago, Ill.

> \* \* \*
>
> Witnesses: J.T. Fields
>
> N.M. Turham
>
> Agent reporting case William H. Newkirk
>
> Remarks: Exhibit #2 weighed and sealed by Agent J.T. Fields, in the presence of F.U. Turner and delivered to the U.S. Chemist, Chicago, Ill., by Agent Fields, for analysis.
>
> \* \* \*
>
> Weighed and Sealed
>
> 1 Oz. 266 grains Heroin
>
> Oct. 25, 1954
>
> By: J.T. Fields
>
> Wintessed by F.U. Turner

*Ware*, 247 F.2d at 699 n.1.  On appeal, the Seventh Circuit determined that the district court had committed reversible error by allowing the admission of these documents.  As the court explained,

> The exhibits were prepared out of the defendant's presence and contain the conclusions of government witnesses as to matters which were in the jury's province to determine.  They are clearly hearsay and inadmissible unless within an exception to the hearsay rule. . . .
>
> \* \* \*
>
> The error [of admitting the envelopes] . . . was compounded by the fact that the jury was permitted, over objection by the defendant, to have the exhibits in the jury room during its deliberations.  The jury thus had before it a neat condensation of the government's whole case against the defendant.  The government's witnesses in effect accompanied the jury into the jury room.

*Id.* at 699, 700.  The Seventh Circuit reached this conclusion even though the people who made the

notes on the envelopes were present at trial and tendered for cross examination, the notes were "merely cumulative of other evidence properly in the record," and "overwhelming evidence" demonstrated the defendant's guilt. *See id.* at 700.

The Eleventh Circuit's predecessor court tackled the same issue fourteen years later in *Brown*, 451 F.2d 1231. As in *Ware*, the trial court in *Brown* had admitted narcotics inside envelopes bearing detailed statements of the essential facts relating to the charges and containing enclosed statements more fully elaborating on the circumstances surrounding the transactions at issue. *Id.* at 1232-33; *see also id.* at 1233 n.2. In a wholesale adoption of the Seventh Circuit's reasoning in *Ware*, the *Brown* Court concluded that the admission of such evidence constituted reversible error, despite the presence and availability at trial of the individuals who made the notations, the "merely cumulative" nature of the notes in comparison to properly admitted evidence, and the "overwhelming evidence" of the defendant's guilt. *Id.* at 1234.

Thirteen years later, in *United States v. Brantley*, 733 F.2d 1429 (11th Cir. 1984), the Eleventh Circuit considered the bounds of *Brown* in this circuit. In *Brantley*, the defendant objected on appeal to the trial court's admission into evidence of a prior written statement by co-defendant and government witness Frank Senior. *Id.* at 1437. The statement contained a detailed account of Senior and the defendant's involvement in the charged matters. On appeal, the defendant argued that "allowing Senior's statement into evidence impermissibly placed a neat condensation of the government's case before the jury and in effect allowed the government's witness to accompany the jury into the jury room." *Id.* at 1438.

The Eleventh Circuit rejected the defendant's argument. As the court explained, Senior's statement was not admitted until after the defendant's attorney cross-examined Senior and suggested

that Senior's testimony was a recent fabrication. In order to demonstrate that it was not, the government offered and the court admitted the challenged written statement that Senior had previously made. In concluding that the admission of Senior's statement did not violate the principle set forth in *Ware*, the Eleventh Circuit characterized the error in *Ware* as the fact that the statements on the envelopes constituted inadmissible hearsay. *Id.* As a result of the statements' status as inadmissible hearsay, the Eleventh Circuit noted, the challenged statements in *Ware* "were not properly before the jury at all." *Id.* Because Senior's statement was not hearsay since it represented a prior consistent statement, the Eleventh Circuit reasoned that *Ware* had no applicability in *Brantley*. *Id.*

Similarly, in *United States v. Pendas-Martinez*, 845 F.2d 938, in applying *Brown* and *Ware*, the Eleventh Circuit relied on the inadmissible hearsay/admissible evidence distinction to conclude that the admission into evidence of a Coast Guard officer's handwritten report of the events leading to the defendants' arrest was error. *Id.* at 942. As the court explained, unlike in *Brantley*, the officer's report in *Pendas-Martinez* was inadmissible hearsay, and no other basis for its admission existed. *Id.*

These cases demonstrate that exhibits such as those at issue on this Motion *in Limine* are admissible if they do not constitute hearsay.[4] Therefore, the Court considers each challenged aspect

---

[4]Such evidence may also be admissible — even if it includes hearsay — where the defendant engages in some affirmative act that brings the evidence into direct controversy. *See, e.g., United States v. Benson*, 495 F.2d 475 (5th Cir.), *cert. denied*, 419 U.S. 1035 (1974) (it was not error to admit agent's written summary of the defendant's post-arrest statement where defense counsel used the document extensively in his cross-examination of the author); *United States v. Parker*, 491 F.2d 517, 522-23 (8th Cir. 1973) (where the defendant vigorously challenged the chain of custody, the proper handling of the exhibit, and the written entries on the exhibit, it was not error for the trial court to admit into evidence the envelope bearing notations concerning the chain of custody of the heroin contained inside it). Currently, however, that issue

of the proposed exhibits to determine whether they include hearsay or otherwise inadmissible material.

A. The Government-Agency Seals

Defendant objects to the agency seals on the cover pages of the exhibits. The Government has not explained how the seals are admissible or why they are relevant to the exhibits. As a result, the Court grants Defendant's Motion as it relates to the seals. The seals must be removed from the cover pages of the exhibits.

B. The Deposit and Computer-Access Summaries

Defendant further challenges the admissibility of the information reflected in the tables regarding deposits and computer access. The Government counters that this information comes from voluminous records that are subject to the hearsay exception set forth at Rule 803(6), Fed. R. Evid. It further argues that the information contained on the tables is summary evidence admissible under Rule 1006, Fed. R. Evid.

Whether the underlying records are admissible under Rule 803(6) is an issue on which the parties present no evidence. Thus, the Court withholds judgment on the admissibility of the underlying records at this time. If they are admissible, the summary charts are likewise admissible.

Rule 1006 provides,

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

---

is not before the Court.

Fed. R. Evid. 1006. The decision whether to permit the use of summary charts lies within the court's discretion. *United States v. Richardson*, 233 F.3d 1285, 1283 (11th Cir. 2000).

According to the Government, it has provided Defendant with the underlying records from which the information in the exhibits was extracted. D.E. 287 at ¶ 9. In addition, the Government has committed to seeking admission of the complete records from which the information summarized in the exhibits was taken.[5] *Id.* Rule 611(a), Fed. R. Evid., instructs,

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

---

[5] By its language, Rule 1006 does not require admission of the complete records from which information appearing on a summary chart is taken, as long as the opposing party has had a sufficient opportunity to examine the complete records and the summary available reasonably in advance of trial. This Court understands this requirement to fulfill the practical purpose of allowing the opposing party to satisfy itself that the information contained in summary chart is a fair and adequate representation of the relevant information from the complete records and that no additional information is required to present the summary information in its fair context. Should the opposing party deem it necessary for the entirety of the records to be submitted to place the contents of the summary chart into its fair context, the court may certainly require that the complete records be admitted into evidence before any summary charts. But nothing in the language of the rule appears to require that, as a matter of course, the party presenting the summary chart must first seek the admission of the complete records on which the summary chart is based. And, in fact, at least one other circuit appears to prefer that underlying evidence not be admitted where summary charts are admitted. *See, e.g., United States v. Anekwu*, 695 F.3d 967, 981-82 (9th Cir. 2012). Nor, as Defendant suggests, do *United States v. Richardson*, 233 F.3d 1285, 1293-94 (11th Cir. 2000), or *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011), demand the admission of the complete records in order to admit summary charts. Rather, *Richardson* requires only that where a summary chart "incorporat[es] . . . assumptions," evidence supporting the assumptions must first have been presented to the jury and the court must make it clear that the ultimate decision should be made by the jury regarding the weight to be given to the evidence. *Id.* at 1294. The information contained on the first summary chart in the exhibits at issue in this case, however, does not include assumptions, but rather, merely factual extractions. On the other hand, the second chart, which attributes computer access to Defendant Rowinsky appears to include the assumption that Rowinsky accessed the computer at the stated times, based on bank records that likely identify his user name, password, or both. Thus, under Eleventh Circuit precedent, the Government must first admit the records supporting the assumption that Rowinsky accessed the computer at the stated times before it may seek admission of the second summary chart.

>   (1)   make those procedures effective for determining the truth; [and]
>
>   (2)   avoid wasting time; . . .
>
>   * * *

Fed. R. Evid. 611(a).  As the Advisory Committee Notes to the 1972 proposed rule explain, the judge is to employ "common sense and fairness in view of the particular circumstances" in ensuring the use of "procedures effective for determining the truth." 1972 Advisory Committee Notes to Fed. R. Evid. 611(a).  In view of the facts that the Government intends to seek admission of the underlying records and that Defendants have had possession of both the underlying records and the summary charts at issue for months, nothing stops Defendants from providing cross-examining the Government's witnesses using competing summary charts that they have made or evidence that the transactions that the Government chose to include in its summary charts do not bear on Defendants' guilt.  To the contrary, Defendants will be able to present any evidence that they feel completes or corrects the picture that the Government tries to paint through its proposed summary charts.

As for Rule 611(a)'s second concern — that of avoiding the wasting of time, noting that this case involves numerous alleged money-laundering transactions over a significant period, the Government suggests that not permitting the admission of the summary charts would require the Government to "spend hours or days pulling out deposit items or line entries from voluminous records and showing them" to a Government witness.  D.E. 287 at ¶ 9.  The Advisory Committee Notes describe the importance of "avoid[ing] . . . needless consumption of time" as "a matter of daily concern in the disposition of cases."  *Id.*  To accomplish the purposes of Rule 611(a), the Rule endows courts with "broad discretion in controlling the order of presentation of evidence." *In re*

*Winn-Dixie Stores, Inc.*, 418 B.R. 475, 476-77 (Bankr. M.D. Fla. 2009); *see also United States v. Joslin*, 436 F. App'x 537, 538 (6th Cir. 2011) (a trial judge has "considerable discretion" under Rule 611); *United States v. Blake*, 571 F.3d 331, 349 (4th Cir. 2009) (Rule 611 "gives the trial court broad discretion . . . ."). Here, Defendant does not contest the Government's representations that disallowing the admission of the summary charts will have a substantial effect on the length of the Government's case, and, based on the Government's statements, the Court concludes that admitting the summary charts would save substantial court time.

In addition, not admitting the summary charts would be the equivalent of sending the jury on a scavenger hunt to find evidence of the very transactions that are allegedly at issue in this case from among the many other transactions that are irrelevant to the particular charges in this case. While the Government must not be permitted to effectively send its witnesses into the jury room to present its case, *see Ware*, 247 F.2d at 700, nor should courts be in the business of making the jury's job to review the relevant evidence unnecessarily difficult. As other courts have reasoned, summary exhibits are properly admitted when they "clarify and simplify complex testimony or other information and evidence." *United States v. Oyakhire*, 431 F. App'x 126, 128 (3d Cir. 2011) (quoting *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998)) (internal quotation marks omitted); *see also United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988) (court did not err in admitting summary charts where case involved "numerous witnesses and voluminous evidence"). Where, as here, the charts do not constitute hearsay or otherwise inadmissible material, they save considerable court time, and they simplify complex and lengthy bank records, they are appropriate admitted. Accordingly, the Court denies the Motion *in Limine* as it relates to the summary charts of the bank records.

C. The Annotations on the Surveillance Images

Finally, Defendant takes issue with the fact that some of the surveillance images contain markings on them, such as circles around, arrows to, and names of the individuals who the Government contends are pictured in the photographs. Defendant asserts that these notations constitute inadmissible hearsay and that they violate the constitutional prohibition of testimonial hearsay evidence. *See* D.E. 282 at 6 (citing *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012)).

The Government responds that the markings at issue do not violate Defendant's Sixth Amendment rights because, unlike in *Crawford*, the person who made the notations will testify and be subject to cross examination. *See* D.E. 287 at ¶ 10. Indeed, the Government further claims that the markings on the exhibits are not even hearsay under Rule 801, Fed. R. Evid., because the person who made them will testify to them in Court.

The Court agrees with Defendant that the names set forth on the images are technically hearsay, even though the witness who made the markings will testify at trial. From the witness stand, of course, who that witness may identify as pictured in the images would not be hearsay, but the names written on the images now — before trial begins — are out-of-court statements that the Government intends to offer for the truth of the matters asserted, thus making them hearsay, particularly because the Government explains that it seeks to offer the evidence in this format to avoid having to "show[] [the Government witness] each photograph and hav[e] him identify each person in each photograph or describe the events depicted therein." D.E. 287 at ¶ 10. In other words, the Government seeks to skip presenting the testimony that provides the basis for the

identifications set forth on the images. Although Defendant will be free to cross examine the witness and thus avoid a Sixth Amendment problem, this fact does not render the identifications set forth on the images before trial any less hearsay at the time that the Government will seek admission of the annotated images during its direct examination of the Government's witness.

And, even if it did, the Court concludes that, particularly when packaged with the other materials in the proposed exhibits, the agent's notes identifying the individuals in each image come perilously close to allowing the Government's witnesses to accompany the jurors into the jury room. For these reasons, the Court agrees with Defendant and grants his Motion *in Limine* as it pertains to the identifications of the people set forth on the images. The Government witness may, of course, still testify to the identifications that he has made.

As for the circles and arrows added to the pictures, the Court does not agree that they constitute hearsay. Rather, the circles and arrows are more akin to summary charts, effectively summarizing the images that the Government believes to be relevant from photographs containing numerous people whose presence is allegedly irrelevant to the charges in this case. For the same reasons that the summary charts are admissible, these markings are likewise admissible. The Court will, of course, instruct the jury appropriately regarding the summary charts and the markings, and Defendant should submit a proposed instruction on these issues.

D.  The Overall Exhibit Packages

Finally, Defendant complains that even if the components of each proposed exhibit are separately admissible, the Court should nonetheless preclude the admission of each of the proposed exhibit packages as single exhibits because the existence of a single exhibit package containing information from different sources may be confusing to the jury.

The Court is unpersuaded. While the Court agrees with Defendant that it must be made clear to the jury that the pieces of each package exhibit derive from separate sources of evidence, so long as that occurs and every part of the proposed exhibit is admissible and is duly admitted, the Government may number and package its exhibits in any fair manner. For ease of reference and clarity of the trial record, however, the Court directs the Government to give each package exhibit a number and each separate component of each package exhibit the same number, along with a letter, so, for example, if a package exhibit is Exhibit 1, the first surveillance image may be Exhibit 1A, the first summary chart may be Exhibit 1B, the second summary chart may be Exhibit 1C, and so forth.

### *III. Conclusion*

For the foregoing reasons, Defendant Manuel Rowinksy's Motion *in Limine* to Strike Summaries and Added Information to Bank Surveillance Photos Sought to be Introduced into Evidence by the Government on the Grounds that They Constitute Inadmiss[i]ble Hearsay and that Their Admission Will Violation Defendant's Right of Confrontation Under the Sixth Amendment [D.E. 282] is **GRANTED IN PART and DENIED IN PART**, consistent with this Order.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 14th day of October 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:        Counsel of Record